UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IAN BARNHART,<br>Individually and on behalf of all others<br>similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>DAVID GLADIEUX,<br>in his official capacity,<br><br>          Defendant. | CAUSE NO.: 1:17-CV-124-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's, Allen County Sheriff David Gladieux, Motion for Partial Summary Judgment [ECF No. 43] pursuant to Rule 56 of the Federal Rules of Civil Procedure and N.D. Ind. L.R. 56-1. For the reasons stated below, the Court GRANTS the Defendant's Motion for Partial Summary Judgment.

**BACKGROUND**

On March 27, 2017, the Plaintiffs filed their Class Action Complaint against Defendant Gladieux, in his official capacity [ECF No. 1]. The Plaintiffs filed an Amended Complaint on June 6, 2017 [ECF No. 18], a First Amended Motion for Class Certification [ECF No. 19], and a Second Amended Complaint on August 15, 2017 [ECF No. 28]. The Plaintiffs allege that the Defendant refused to provide the Plaintiffs with absentee ballots or alternative access to the polls in violation of the Fourteenth Amendment and seeks damages pursuant to 42 U.S.C. § 1983. [ECF No. 28, ¶¶ 14, 18–21, 24–30].

On November 13, 2017, the Court dismissed the Plaintiffs' First Amended Motion for Class Certification. (Op. and Order at 5, ECF No. 32.) In that Order, the Court found that, although Plaintiff Barnhart was not incarcerated until after the date in which he could request an absentee ballot, he could not vote solely because he was a pretrial detainee in the Allen County Jail and "[t]he Defendant did not provide any means for Plaintiff Barnhart to exercise his right to vote." (*Id.* at 6.)

On March 7, 2018, Plaintiff Barnhart filed a Second Motion to Certify the Class [ECF No. 36], which was granted on May 17, 2018 [ECF No. 41]. The Court certified the following class:

> All individuals held at the Allen County Jail on November 8, 2016, who on that date were U.S. citizens, residents of Indiana, were at least eighteen years of age, were not serving a sentence for a conviction of a felony crime, had not previously voted in the 2016 general election, were provided neither an absentee ballot nor transportation to a voting center, and were registered to vote or had been denied the opportunity to vote while held in the Allen County Jail. (Op. and Order Granting Class Cert. at 11, ECF No. 41.)

On July 23, 2018, the Defendant filed a Motion for Partial Summary Judgment, seeking to dismiss the claims of the Class Members incarcerated in the Allen County Jail on or before October 31, 2016 (hereafter referred to as the "October Class Members") [ECF No. 43]. The Defendant argues that the Plaintiffs have failed to demonstrate that the October Class Members were unable to vote by absentee ballot under Allen County Jail policy or practice. (Def.'s Mem. in Supp. of Mot. for Partial Summ. J. at 1, ECF No. 44.) The Defendant argues that the October Class Members were freely able to vote by absentee ballot under both express Allen County Jail policy and Indiana law. (*Id.* at 2.) Thus, the Defendant argues, no policy or practice of the Allen County Sheriff's Department caused any alleged constitutional injury. (*Id.*) The Defendant does not move for summary judgment for Class Members booked into the Allen County Jail after the

October 31, 2016 deadline to request an absentee ballot, as issues of fact that preclude an entry of summary judgment. (*Id*. at 2–3).

On August 20, 2018, the Plaintiffs filed a Response to Defendant's Motion for Partial Summary Judgment [ECF No. 45]. On September 4, 2018, the Defendant filed a Reply in Support of Motion for Partial Summary Judgment [ECF No. 47]. On September 27, 2018, with the Court's permission, the Plaintiffs filed a sur-response to the Defendant's Motion for Partial Summary Judgment [ECF No. 50].

## STATEMENT OF FACTS

Defendant Gladieux operates the Allen County Jail in Allen County, Indiana and did so at the time of the 2016 general election. The Allen County Jail Rules (Jail Rules) were posted for prisoner viewing and include a section regarding inmate rights and privileges, including the right to vote. The rules state: "An inmate shall be entitled to vote by absentee ballot upon meeting voter's registration requirements under the Law of the State of Indiana, as long as the inmate is not serving a sentence upon conviction of a felony."

To vote in the 2016 general election, an eligible individual was required to register to vote by Tuesday, October 11, 2016. The deadline to request an absentee ballot via mail was 11:59 p.m. on October 31, 2016. Indiana law requires that a voter request an absentee ballot on his or her own behalf. The Defendant has no record of any inmate detained in the Allen County jail timely requesting an absentee ballot for the 2016 general election. Nor does the Allen County Election Board have any record of any inmate requesting an absentee ballot for the 2016 general election.

In-person early voting in Allen County took place from October 12, 2016 until November 7, 2016, and the general election took place on November 8, 2016. Of the inmates detained in the Allen County Jail on November 8, 2016, over 300 inmates were registered to vote. On the day of the general election, the Defendant did not provide any inmates or detainees held at the Allen County Jail on November 8, 2016 transportation to vote. The Defendant also did not provide any inmates or detainees an on-site jail polling station at the jail to vote in the 2016 election.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not

deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## ANALYSIS

Suits against county officials in their official capacities are treated as suits against the county itself. *Weeks v. Hodges*, 871 F. Supp. 2d 811, 824 (N.D. Ind. 2012). "Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grievson v. Anderson*, 538 F. 3d 763, 771 (7th Cir. 2008). "The official policy requirement for liability under 1983 is to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quotations and citations omitted) (emphasis in original).

Under *Monell* liability, policymakers can be sued in their official capacity for promulgating unconstitutional policies or allowing unconstitutional policies and customs so regularly that they have the force of law. *See Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674–675 (7th Cir. 2009) (citing *Monell v. City of New York*, 436 U.S. 658, 98 (1978)). A plaintiff "can establish a 'policy or custom' by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296

F.3d 531, 537 (7th Cir. 2002) (internal quotations and citation omitted). The Plaintiffs allege that: (i) omissions in the Defendant's policies contributed to a widespread practice that resulted in the October Class Members' inability to exercise their right to vote via absentee ballot; and/or (ii) the Defendant's failure to train employees resulted in constitutional injuries. (Pls.' Br. in Opp. of Mot. for Summ. J. at 10, 14.)

A.  **Express Policy or Omission and Evidence of Widespread Practices**

The express policy theory applies when a plaintiff can point to an explicit policy or *an omission* in a policy that violates a constitutional right. *See Calhoun v. Ramsey*, 408 F.3d 375, 379–80 (7th Cir. 2005) (emphasis added). The Plaintiffs argue that two distinct omissions from the policy—the lack of information in the Allen County Jail policy regarding how prisoners could vote, and the policy's failure provide inmates or detainees a way to vote apart from absentee ballot—resulted in the Class Member's constitutional deprivation. (Pl.'s Br. in Opp. of Mot. for Summ. J. at 14, ECF No. 46.) In cases in which a party argues that an omission from a policy caused a constitutional deprivation, the Seventh Circuit considers whether the policy failed to address certain issues and whether there were widespread practices that caused a constitutional violation together, as the claim requires more evidence than a single incident to establish liability. *See, e.g.*, *City of Okla. v. Tuttle,* 471 U.S. 808, 822 (1985) ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy or lack of policy] and the constitutional deprivation."); *Calhoun* 408 F.3d at 381 ("Because he cannot point to any language in the jail's policy that is constitutionally suspect, he must provide enough evidence of

6

custom and practice to permit an inference that the County has chosen an impermissible way of operating."). The plaintiff must provide more evidence than a single incident, as "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work, not the kind of isolated incident that … cannot support municipal liability." *Id*.at 380 (internal citation omitted). This is necessary as "[n]o government has or could have policies about virtually everything that might happen. The absence of a policy might thus mean only that the government sees no need to address the point at all, or that it believes that case-by-case decisions are best, or that it wants to accumulate some experience before selecting a regular course of action." *Id*.

Thus, the Court must ask: (i) whether the Defendant's express policy in the Jail Rules was sufficient, or contained omissions that violated the Plaintiffs' right to vote; and, if there are omissions, (ii) whether there was a widespread practice in place of the policy that caused the Plaintiffs' constitutional violations. The Defendant maintains that the express policy in the Jail Rules is sufficient and that there was no widespread practice that disenfranchised the Plaintiffs. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 7, ECF No. 44.) The Plaintiffs argue that eligible inmates were not permitted access to absentee ballots, as an express policy that permitted prisoners to request absentee ballots does not necessarily mean that prisoners were able to exercise that right. (Pl.'s Br. in Opp. to Def.'s Mot. for Partial Summ. J. at 13–14.)

Individuals held in jail who are otherwise eligible to vote must be afforded a "means of casting their vote." *O'Brien v. Skinner*, 414 U.S. 524, 530 (1974). Indiana law is clear that an inmate must obtain his or her own absentee ballot. Ind. Code § 3-11-4-2. A Sheriff cannot do so on behalf of an inmate. *Id*. The Plaintiffs produced a petition [ECF No. 28-2] from prisoners who were "aggrieved by" the Defendant's voting policy and several affidavits that numerous Class

Members would have voted and were unable to do so because no method was made available. These affidavits include those class members that the Defendant seeks to dismiss via summary judgment who were eligible to vote via absentee ballot [ECF No. 45-1–45-15]. The Plaintiffs maintain that the petition and affidavits demonstrate the Defendant's failure to provide absentee ballots, which was caused by an omission in the Allen County Jail's express policy. (Pl.'s Br. in Opp. to Def.'s Mot. for Partial Summ. J. at 12–14.) The petition is a list of names with the title "I Demetrius D. Buroff would like to file a Class Action Law suite [sic] under the law of the State of Indiana's Absentee Ballot Voters registration requirements." The affidavits all state: "On November 8, 2016, at the Allen County Jail, if there had been a method made available to me to cast a ballot in the election, I would have voted." (*See e.g.*, Aff. Long, ECF No. 45-10.) The Plaintiffs point to the petition and affidavits as the non-moving party to demonstrate that rather than an "isolated incident," there were multiple individuals who found themselves unable to exercise their right to vote due to failures in the Defendant's. (Pl.'s Br. in Opp. to Def.'s Mot. for Partial Summ. J. at 6.)

Affidavits are evidence and are to be considered on summary judgment. *See Knox v. Weltman, Weinberg & Reis Co., L.P.A.*, 2013 WL 3338311, at *3 (N.D. Ind. June 28, 2013). In ruling on a summary judgment motion, the Court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weight the evidence or the credibility of witnesses. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251 (1986). The Plaintiffs ask that the Court view the supporting documentation to suggest that the October Class Members were unable to obtain absentee ballots due to an omission in policy—namely, the inability to obtain absentee ballots. (Pls.' Resp. to Def.'s Mot. for Summ. J. at 13.) A review of the petition and affidavits, however, indicates that the Court cannot make a

legitimate inference that an omission in the Defendant's policy or a widespread practice existed that violated the Class Members' right to vote.

The Defendants cite *Long v. Pierce*, No. 2:14-cv-224, 2016 WL 912685, at *5 (S.D. Ind. Mar. 10, 2016) to support its contention that when inmates are free to obtain absentee ballots pursuant to jail policy and fail to do so, that this failure does not give rise to a claim against the Defendant housing them. (Def.'s Mem. in Supp. of Mot. for Partial Summ. J. at 7.) The Plaintiffs argue that the Defendant misinterprets *Long v. Pierce* and maintain that the case states that an inmate's allegation of not being provided an absentee ballot to vote can survive summary judgment. (Pl.'s Br. in Reply to Def.'s Mot. for Partial Summ J. at 12.)

The Northern District of Indiana has no analogous cases to the facts presented; *Long* and *Post v. Du Page County, Illinois*, 1993 WL 101823 (N.D. Ill. Apr. 1, 1993) are the only district court decisions, within the Seventh Circuit, that have considered similar facts. However, in both *Long* and *Du Page*, the prisoners requested assistance from jail personnel and did not receive assistance. *Long*, 2016 WL 912685, at 5 ("Here, Long has alleged that he asked Conaway to get him a ballot so that he could vote in the 2012 General Election, and that Conaway told Long he would figure out how to make it happen, but never did"); *Du Page*, 1993 WL 101823, at *8 ("[The plaintiff] maintains that despite his requests, defendants collaborated to deprive him of his right to vote."). In this case, neither the petition nor the affidavits indicate that the October Class Members requested assistance in obtaining an absentee ballot and were denied. That these October Class Members were registered to vote and failed to do so via absentee ballot is not, as the Plaintiffs argue, dispositive evidence that the prisoners were denied his or her right to vote. The petition and affidavits, because they do not indicate that the inmates requested absentee ballots, do not support an inference that the prisoners were denied their right to vote.

The Jail Rules, which were posted such that prisoners were able to view them, informed the Class Members that they could vote by absentee ballot. (Def.'s Answer at 10.) The Plaintiffs argue that this policy is insufficient and "Plaintiffs could not vote by absentee ballots if they were unable to obtain them, and if they were unable to obtain them, their right to vote was infringed if not otherwise accommodated in the same manner as similarly situated eligible voters." (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss at 13.) The Plaintiffs fail to present evidence, however, that any of the affiants or petitioners attempted to obtain an absentee ballot and was unable to do so

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). Based on this standard, the Court cannot say that the policy within the Jail Rules was insufficient without evidence that the Class Members attempted to exercise their rights pursuant to the policy. Accordingly, the Plaintiffs have failed to establish that there was an omission in the Jail Rules, and therefore does not need to address whether there was a corresponding widespread practice that violated the Class Members' right to vote.

**B.     Official Policy or Custom that Caused Harm**

As the Plaintiffs failed to demonstrate that there was a genuine dispute of material fact as to whether there was an omission in the Defendant's policy that harmed the Plaintiffs, the

Plaintiffs must now show that the official policy or custom was the "moving force" that caused the alleged constitutional violation to survive summary judgment. *Grievson*, 538 F. 3d at 771. The Plaintiffs argue that the Defendant may be liable in his official capacity pursuant to § 1983 under a failure to train theory as the Defendant did not act affirmatively to impose protocol, train employees, or direct proper oversite at his jail. (Pl.'s Br. in Opp. to Def.'s Mot. for Partial Summ. J. at 10.) The Plaintiffs maintain that the Defendant had total control over the Class Members' movement, communication, and access to information. (*Id*. at 14.) Thus, the Plaintiffs argue that the Defendant is liable for his inaction, specifically his failure to affirmatively impose protocol such that the Class Members could exercise their right to vote.

"[A]n affirmative link" must exist between the deprivation and the defendant's conduct. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983). "An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation." *Id*. An official, however, "satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982).

The Defendant had final policymaking authority. (Def.'s Mem in Supp. of Mot. for Partial Summ J. at 9.) The Defendant argues, however, that the Plaintiffs cannot show that the Defendant committed a deliberate act which caused the alleged violation of the Class Members' constitutional rights. (*Id*. at 9–10.) The Plaintiffs can demonstrate that the alleged widespread practice of denying Class Members their right to vote was attributable to the Defendant, by showing that the Defendant was "deliberately indifferent as to [their] known or obvious consequences." *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 406–07 (1997). This inaction

must amount to "deliberate indifference, so that it is fair to infer that the inaction is itself a policy." *Harris v. City of Marion, Ind.*, 79 F.3d 56, 59 (7th Cir. 1996). Isolated incidents are insufficient to support a claim of deliberate indifference. *Tuttle*, 471 U.S. at 823–824. The Plaintiffs cite the Defendant's answers to its request for admission, which indicate that he received no requests for absentee ballots and provided no assistance with voter registration, despite that approximately 300 inmates were eligible to vote in the general election, as an example of deliberate indifference. (Pl.'s Br. in Reply to Def.'s Mot. for Partial Summ J. at 14.) To the Plaintiffs, these admissions demonstrate that the October Class Members were unable to exercise their right to vote due to the Defendant's failure to affirmatively act.

A defendant must, however, have actual or constructive notice of a problem. *Miranda v. Cty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). "[B]efore a municipality may be held liable under a 'failure to train' theory, it must first be established that the defendants were on notice of constitutional violations committed by their inadequately trained employees." *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). An isolated incident is insufficient to put a defendant on notice of a constitutional violation. *Id*. A "repeated pattern or widespread practice of constitution violations that makes the need for further training plainly obvious…can establish deliberate indifference." *Davis v. Carmel Clay Sch.*, 570 F. App'x 602, 608 (7th Cir. 2014). If there is no basis to think that training is inadequate, there can be no liability under a failure to train theory. *Id*. As with the evaluation of the previous theory, the Plaintiffs' argument fails for the same reason—no affiant testified that he or she attempted to request an absentee ballot.

The Plaintiffs' evidence, the petition and affidavits do not demonstrate that there was an attempt to exercise the right to vote via absentee ballot. Without such an affirmative attempt, the Defendant could not have had a basis to think that the training was inadequate. That the October

Class Members were eligible to vote via absentee ballot and failed to do so does not mean that the Defendant was on notice that training was inadequate. Thus, the Plaintiffs have not demonstrated that there is a genuine dispute of material fact as to whether the Defendant's failure to train resulted in the disenfranchisement of the October Class Members.

## CONCLUSION

The Plaintiffs have not demonstrated that there is a genuine issue of material fact for trial with respect to the October Class Members. For the foregoing reasons, the Court GRANTS the Defendants' Motion for Partial Summary Judgment [ECF No. 43]. Accordingly, the Court DISMISSES WITHOUT PREJUDICE the claims of Class Members incarcerated in the Allen County Jail on or before October 31, 2016. The claims of the Class Members incarcerated in the Allen County Jail after that date remain pending.

SO ORDERED on April 3, 2019.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT